Parker C. J.
delivered the opinion of the Court. [After stating the pleadings.] We think the replication is ill either in substance or form. If the facts averred in it are in point of law a sufficient avoidance of the bar, then it ought to have concluded with a verification, in order that the tenant might deny those facts and put them in issue. The plea in bar avers facts which undenied undoubtedly constitute an unlawful transaction between the demandant and the manufacturing *353 company.[1] It is exactly the case described in 32 Hen. 8, c 9, of buying a pretended title, knowing of an adverse possession under a claim of title. That statute, though never reenacted here as in New York, has been adopted in this commonwealth in practice, and must therefore be considered as part of the common law here. The replication intends to avoid the bar, by showing a purchase of another parcel of land of which there was no adverse possession at the time of the transfer, and the purchase of this parcel as necessary to the proper use of the other. Now admitting this to be a sufficient avoidance of the bar, it is clear that the tenant ought to have had opportunity to answer or deny it, which he is precluded from by the traverse ; and for this cause, if no other, judgment should be for the tenant, if the plea is a sufficient answer to the declaration. We are inclined to think, too, that the replication is bad in substance as an answer to a good plea in bar; acknowledging a transaction which amounts in law to maintenance, or at least the buying a disputed title, knowing of an adverse claim and possession. The fact that the premises so situated were necessary to the profitable use of another tract which the demandant had sold to the manufacturing company, would be no excuse for the unlawful act. If the sale of that of which he was in possession could not be effected without the sale of that which was claimed and possessed by another, he should have postponed his sale until he had evicted the tenant by lawful process, instead of selling the dispute in order to make sale of that which he had
lawful right to convey.
We come therefore to the consideration of the plea in bar, .o see if the facts which it contains are a sufficient answer to the declaration. As before observed, it sets forth an unlawful bargain and conveyance of land in the possession of another claiming title, but it shows no title to the land in the tenant. *354 It alleges the seisin of Fletcher in the year 1816, but does not state whether that seisin was lawful, or founded upon a disseisin of the demandant. The latter is to be presumed, for the plea must be taken most strongly against him who makes it. The whole of the defence, as stated in the bar, amounts to this: — that true it is the demandant was disseised as he declares, but he has no right to recover possession, because he has attempted to part with his right and • interest, and that under circumstances which render his conveyance illegal, and the deed null and void. The obvious conclusion from these premises would be, that the demandant’s title remained as before, and that he should recover possession against the disseisor or any claiming under him.
But it is stated that the present suit is brought at the instigation of the grantees in that deed, and at their instance and expense, with a view to carry into effect the unlawful bargain, and it is supposed that on this account the action ought not to be maintained.
It would certainly seem that the law ought not to lend its aid to the parties to an illegal contract, to carry it into execution, and yet there are difficulties in maintaining this plea which we see not how to overcome.
To establish such a defence would be in fact to transfer the. title of the land from the demandant to the tenant, by way of punishment for the attempt to convey it unlawfully; but neither the statute of 32 Hen. 8, nor the common law, establishes such penalty ; nor do we find that either in England, where the offence probably was common at and after the passing of the statute, or in this commonwealth, where the principles of that statute have been so far adopted at least as that the buying of disputed titles under circumstances which show an intent to disturb men in their possession has been held criminal, or in New York, where the legislature have reenacted the statute of 32 Hen. 8 almost in its very words, such a consequence has been attributed to the offence. B) the statute itself the culpable parties are made subject to forfeiture, the one, of a sum equal to the price which he contracted to receive, and the other, of the value of the land so attempted to be purchased, and the conveyance is rendered *355 bull and void. The title is left unaffected by the transaction. See St. 32 Hen. 8, c. 9. In New York, under their statute, there have been prosecutions for the penalties prescribed, and the deeds passed to consummate the bargain have been con sidered null ; but no instance has occurred, in which a disseisor has been held to make a good defence against the disseisee, by showing that he bad unlawfully bargained away his land. On the contrary, it is held in that State, that if a person out of possession conveys land held adversely by another, such conveyance is void for maintenance, and the title to the land remains in the grantor, though he is subject to the penalty in the statute. In a case preserved in a manuscript of the chief justice in 1802, it was said, that “ the whole court concurred in opinion, that a conveyance of land, by a person against whom it was adversely held, at the time of making it, tv as void ; but that the grantor was not devested of his original right by such conveyance.” Jackson ex dem. Jones et al. v. Brinckerhoff, cited by the chancellor in Williams v. Jackson, 5 Johns. R. 500. Clinton, senator, said, “ As to the assertion, that this grant operates as an extinguishment of the title, I consider it as a mere dictum, and entirely groundless. — By statute, in this case, a penalty, equal to the value of the land, is incurred. Another punishment is now contended for ; a forfeiture of the land itself; a doctrine totally unsupported by law, and which would produce the most mischievous consequences. It would encourage intrusion upon property, clog and embarrass alienations of real estate, and open a wide door to fraud and injustice.” Williams v. Jackson, 5 Johns. R. 505. The very point came before the Court of Errors in that case. The declaration contained three counts, on three demises : the first, by Tibbits ; the second, by the sons of Bradt; and the third, by the heirs and representatives of V. P. Douw, who was the heir of Jonas Douw. The lessors in the last count having obtained title from the other claimants, conveyed to George Tibbits, for the use of whom the action was brought. The defendant showed title under another patent, dated 1786, and that he had been in possession ,en years. Tibbits’s deed from the heirs of Douw was dated 1803. It was strongly insisted, that the making of this con *356 yeyance barred the right of Douw to recover, but this was overruled. It never appears to have been considered there that a disseisor might maintain his possession by showing that the disseisee had violated the statute, but the remedy has been by action for the penalty. So also in England. In this commonwealth there never has been such a statute : nevertheless such transactions have been always deemed unlawful; though it may be doubted whether an action will lie for the penalty, there being probably no case on record of such an action. The guilty parties here would be punished on indictment by fine and imprisonment, as at common law. To say that the person in possession should hold the land against the claim of the owner, because he had committed an offence, would be to impose a punishment not provided for by the statute of Henry, nor known by the common law.
In this commonwealth the offence of buying and selling land whereof there is an adverse possession at the time of tlye bargain, has rarely been brought before the courts. But one case, in which it has been the subject of animadversion directly, appears in our Reports, and this will presently be considered. A case not reported, however, happened in the county of Cumberland before the publication of the Reports, which, if the traditionary account of it be true, would go far to support the plea in bar in this case. The case was Drinkwater v. Martin, a real action, and it is said that the tenant to the writ was allowed to show, under the general issue, that the demandant had executed deeds of the premises to a stranger to the action, purporting to convey all the right of the demandant, he not being in possession, whereupon the action was defeated. A brief statement of this case is contained in Mr. Dane’s Abridgment, vol. 6, p. 743 ; which is probably correct, as he practised at that period in Maine, and is known to have taken minutes of all important decisions. I think however he has mistaken the names of the parties to the suit. He states it to be a case between M} Curdy et alv. Elioin et al. ; a writ of right ; that it- appeared at the trial, “ that one Drinkwater had purchased of the plaintiffs theii right and had got his deeds recorded, and that he had given bonds that the plaintiffs should be at no costs in the suit *357 The court nonsuited the plaintiffs because, as was said, the real plaintiff was a mamtainer, though the plaintiffs had not by law parted with their rights, because not in possession when they gave the deed.” Mr. Dane adds—“ (¿acere, as to these proceedings, especially the nonsuit. All was done suddenly, and • there was no prosecution. See 8 Johns. R. 228, where such matters seem to have been better understood.” The case was decided in 1797.
Perhaps Mr. Dane’s opinion of this case, if it stood alone, however highly we respect such authority, would not justify us in denouncing this case as wrongly decided ; but in the case of Wolcot et al. v. Knight et al., in the same county, in the year 1810, it was brought directly before the Court and was entirely overruled. Chief Justice Parsons, in behalf of the Court then sitting, referring to the case commented upon by Mr. Dane, says the decision was made in haste during a jury trial, when the judges were denied any means of consulting books, or of deliberation on the point : and it must be overruled, as repugnant to the established rules of evidence, applicable to the trial of actions of entry on the general issue.” He proceeds to say, that “ it was said by the judges in that case, that the purchase of a dormant title, from a party not seised, by a stranger out of possession, was an offence at law. This is true, when made wittingly to disturb the tenant in his possession. The parties may be punished for the offence, and the conveyance is void; but there is no scintilla of law, that a man, having a right to recover in a real action, is barred by the execution of a deed, purporting to be a conveyance, but by which his right did not pass unless by way of estoppel as between the parties to the deed.
The principle thus laid down is decisive of the question now before ns, and it seems to conform to the spirit of the cases in New York on the same subject. If in England and New York, where there are express prohibitions by statute against this sort of maintenance, the right of recovery by a disseisee has never been questioned, surely in this commonwealth, where the prohibition rests altogether on common law derived from the ancient English statute, to uphold the bar in the present case would be entirely an interpolation.
*358 The cases cited by the tenant’s counsel, except those which go to show that the facts detailed in the plea amount to maintenance, which is not denied, are, we think, inapplicable . to the question. They prove generally, that a man suing for the fruits of a vicious or unlawful contract, shall not be sustained in court. As in the case of. goods sold to one intending to smuggle them into the country, in fraud of the revenue, the vendor knowing of the intent of the purchaser, and other cases of similar import, the vendor shall not recover, because he aids and abets in the unlawful act. The action is between two guilty parties, and neither shal. prevail in law in an action against the other. But in the case, before us, the owner of the land does an act which is unlawful and void. He is subject to punishment, but a forfeiture of his land makes no part of the punishment. Nor can the tenant who has wrongfully dispossessed him, in any way acquire a right to the land by reason of the offence committed by the owner. In the cases cited the plaintiff proceeds on a contract founded on a violation of law ; in the case before us there is no contract ; the demandant complains of a wrong done him by the tenant, and the tenant would purge it by showing that his adversary had done wrong to the public. There is neither reason nor logic in this. True it is, the tenant avers that the action is brought for the benefit of the party to the unlawful contract, and that he will immediately avail himself of the fruits of this suit, and thus defeat the intent of the- law ; but the law declares the deed void, and cannot anticipate that the parties will hereafter make it effectual. The grantees can never set it up as the evidence of a conveyance to them ; if it operates at all, it can only be by way of estoppel against the grantor. If they should have to bring a suit against the tenants in their own names, the deed will be inoperative. Any after deed from the grantor to any other person will convey his title after he shall have obtained possession, notwithstanding this conveyance.
The case of Swett et al. v. Poor et al., cited by the tenant’s counsel, has no reference to the case in discussion. It decided only, that a party guilty of the offence of maintenance •annot recover against the other party to the same transac *359 ti on, damages for intercepting the conveyance thus unlawfully made. It is in that case stated, that maintenance is an offence oy common law, and is punishable on indictment.
The counsel for the tenant has cited the case of Wolcot et al. v. Knight et al. to prove that in an action of entry the tenant may in defence plead in bar a conveyance of the land by the demandant; the same case shows that to such a plea the demandant may reply that nothing passed by the deed.
Tire present plea in bar is grounded upon the nullity of the deed from the demandant, so that there is nothing to show the title out of him. It is^admitted by the tenant’s counsel, that he has been unable to find any precedent for the plea which he has made in this case. The cases cited show that where-such a defence in a real action has been attempted, it has failed. This action is not brought, so far as we can understand from the record, to enforce an unlawful contract. The legal effect of a recovery is only to restore to his possession, one who has been tortiously ousted of it. The consequences of the recovery between other parties, and the state of the title under the deed averred to be unlawful, and which from the facts stated appears to be so, are considerations which do not belong to this case.

Second plea adjudged bad.

[1]

 See Somes v. Skinner, 3 Pick (2d ed.) 61, n. 2; Cleverley v. Whitney, 7 Pick. 36; 2 Chitty on Crim. Law, (3d Amer. ed.) 234, n. C ; 4 Kent’s Com. (3d ed.) 446 to 450. In some States a transaction of this nature is not held unlawful. Hadduck v. Wilmarth, 5 N. Hamp. R. 181; Whittemore v. Bean, 6 N. Hamp. R. 47 ; Stoever v. Whitman, 6 Binney, 420; Cressen v. Miller, 2 Watts, 272; Aldridge v Kincaid, 2 Littell, 393; Frizzle v. Beach, 1 Dana, (Ken.) 211

 Where a writ of entry, brought by the grantee in the name of the grantor to recover land of which the grantor was disseised at the time of the conveyance, was commenced without the knowledge of the grantor, but was prosecuted with his consent, the court refused to order a nonsuit. Cleverley v Whitney, 7 Pick. 36.